*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1949**

Alan B. Fish, P. A.,
Respondent,

vs.

Scott Janson,
Appellant.

**Filed May 23, 2016
Affirmed
Schellhas, Judge**

Roseau County District Court
File No. 68-CV-14-250

Alan B. Fish, Alan B. Fish, P.A., Roseau, Minnesota (attorney pro se)

Peter A. MacMillan, MacMillan, Wallace & Athanases, PLLC, Minneapolis, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Halbrooks, Judge; and Schellhas, Judge.

## UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant asks us to reverse the district court's denial of his motion for relief from a default judgment and execution, arguing that the judgment is void for lack of personal jurisdiction and offering an alternative basis for relief on the grounds of mistake or inadvertence. We affirm.

## FACTS

Respondent Alan B. Fish P.A. sought to sue appellant Scott Janson on a claim of account stated for unpaid legal services in the amount of $6,022.16. On January 7, 2014, Fish delivered a summons and complaint asserting that claim to Janson's adult niece, Jackie Janson, at her Fargo, North Dakota, residence.[1] According to Fish, personal service was attempted at this address because, among other things, Janson had "represent[ed]" that he was utilizing the address "as his last abode."

Janson did not answer the complaint. On April 11, 2014, Fish filed in Roseau County District Court the summons, complaint, and affidavit of service. On April 23, Fish filed an affidavit of no answer, and the district court entered a default judgment of $6,619.16 against Janson. Janson acknowledges that notice of entry of judgment "apparently" was mailed to him at the address of Jackie Janson's Fargo residence but denies receiving such notice.[2]

Janson did not satisfy the judgment. At Fish's request, the district court issued to the Roseau County Sheriff an April 9, 2015 writ of execution on Janson's in-county property. On April 21, the sheriff levied on Janson's interest as the vendor in a contract for deed (vendor interest), which contract provided for Janson's sale of real property located in Roseau County to Shannon Stoskopf for $75,000. On April 22, notice of sheriff's sale of Janson's vendor interest was posted at three public places in Roseau County. And on

---

[1] The affidavit of service identifies Jackie Janson as "Jacqueline K. Hill." Janson does not dispute that the summons and complaint were delivered to Jackie Janson.

[2] A file copy of the notice appears in the record and lists Janson as a recipient; however, no address for Janson appears on the notice.

May 8, the sheriff mailed to Janson, at the address of Jackie Janson's Fargo residence, the writ of execution and notices of levy on and sheriff's sale of Janson's vendor interest. At the sheriff's sale on May 20, Stoskopf purchased Janson's vendor interest for $7,583.85. On May 27, the sheriff filed a return of execution "fully satisfied."

On August 31, 2015, Janson moved to vacate the default judgment and filed supporting affidavits and exhibits. On September 21, Janson filed an amended motion to vacate the default judgment, void the writ of execution, and invalidate "all acts taken thereunder," together with a supplemental affidavit and exhibits. Fish opposed Janson's motion for relief and filed a supporting affidavit and exhibits. Janson then filed additional affidavits in support of his motion. The district court heard oral argument on Janson's motion, denied it, and declared that the writ of execution was not void and that acts taken under it were valid.

This appeal follows.

**D E C I S I O N**

"[An appellate] court will not overturn a ruling on a motion to vacate a default judgment unless the district court abused its discretion." *Roehrdanz v. Brill*, 682 N.W.2d 626, 631 (Minn. 2004); *see also Roe v. Widme*, 191 Minn. 251, 253, 254 N.W. 274, 275 (1934) ("The matter of opening a default lies almost wholly in the discretion of the trial court, and its action will not be reversed on appeal except for a clear abuse of discretion."). "The discretion of the district court in opening a default judgment is particularly broad when the court's decision is based upon an evaluation of conflicting affidavits." *Roehrdanz*, 682 N.W.2d at 631–32 (citing *Roe*, 191 Minn. at 252–53, 254 N.W. at 275).

3

But "[a] district court abuses its discretion if its findings are unsupported by the evidence or its decision is based on an erroneous view of the law." *Kern v. Janson*, 800 N.W.2d 126, 133 (Minn. 2011).

A district court may vacate a judgment and "grant such other relief as may be just" if "[t]he judgment is void" or based on "[m]istake, inadvertence, surprise, or excusable neglect." Minn. R. Civ. P. 60.02. In this case, Janson argues that he is entitled to relief from the default judgment and execution because the judgment is void for lack of personal jurisdiction due to insufficient service of process. Janson argues in the alternative that he is entitled to relief because the default was caused by mistake or inadvertence.

As a threshold matter, we acknowledge the district court's jurisdiction to consider a motion to vacate a default judgment that already has been satisfied. "Minnesota courts, characterizing the issue as jurisdictional, have held that satisfaction of a judgment generally precludes a party from moving to vacate that judgment." *Lyon Fin. Servs., Inc. v. Waddill*, 607 N.W.2d 453, 454 (Minn. App. 2000). But "an involuntarily satisfied judgment does not fit within the general civil-action rule because it does not involve a waiver of rights that results in mootness." *Id.* at 455. A district court therefore retains jurisdiction to consider a motion to vacate a judgment even if that judgment has been satisfied involuntarily by execution. *See id.* at 454–55 (holding that "[t]he involuntary satisfaction [by execution] of [creditor]'s judgment against [debtor] does not operate as a waiver of rights that results in mootness or loss of jurisdiction" over debtor's motion to vacate judgment).

Turning to the merits, we agree with Janson that "[a] judgment is void if the issuing court lacked personal jurisdiction over a party through a failure of service that has not been

4

waived." *Ayala v. Ayala*, 749 N.W.2d 817, 820 (Minn. App. 2008). "Whether service of process was effective, and personal jurisdiction therefore exists, is a question of law that [an appellate] court reviews de novo." *DeCook v. Olmsted Med. Ctr., Inc.*, 875 N.W.2d 263, 270 (Minn. 2016). But "[appellate courts] apply the facts as found by the district court unless those findings are clearly erroneous." *Id.*

Personal service is accomplished "[u]pon an individual by delivering a copy to the individual personally or by leaving a copy at the individual's usual place of abode with some person of suitable age and discretion then residing therein." Minn. R. Civ. P. 4.03.[3]

> As used in this sense, "abode" means one's fixed place of residence for the time being. In such connection "abode" and "residence" may be synonymous. But ordinarily "usual place of abode" is a much more restricted term than "residence," and means the place where the defendant is actually living at the time when service is made. The purpose of the use of the term in an act relating to the service of process has primary reference to the place where the defendant is usually to be found. Therefore "usual place of abode" means "present place of abode."

*Holtberg v. Bommersbach*, 236 Minn. 335, 337, 52 N.W.2d 766, 768 (1952) (quotation omitted).

Here, Janson contests the sufficiency of service of process by asserting that Jackie Janson's Fargo residence, at which Jackie Janson was delivered the summons and complaint, was not his "usual place of abode" on January 7, 2014, the date of delivery. Fish

---

[3] While Minn. R. Civ. P. 4.03 provides for service "within the state," Minn. R. Civ. P. 4.04(b) provides that "[p]ersonal service . . . outside the state, proved by the affidavit of the person making the same . . . , shall have the same effect as" service by publication within the state.

responds by arguing that "[Janson] failed to allege sufficient credible facts to the trial court to establish an 'abode' by clear and convincing evidence," citing *Peterson v. Eishen*, 495 N.W.2d 223, 225–26 (Minn. App. 1993), *aff'd*, 512 N.W.2d 338 (Minn. 1994).

The district court adopted Fish's claim that, under *Peterson*, Janson was required to produce "clear and convincing evidence to overcome the presumed validity of service," ultimately concluding that Janson failed to do so. In *Peterson*, we stated that "a sheriff's return or an affidavit of service is usually strong evidence of proper service" that "may be overcome by the production of clear and convincing evidence" of insufficient service. 495 N.W.2d at 225–26. But we went on to state:

> [W]hen the process server has no personal knowledge regarding where the defendant actually is living, the portion of the affidavit of service relating to the defendant's usual place of abode is inconclusive.
>
> Nothing in the record indicates the process server had personal knowledge that [the defendant] lived at the address [to which the summons and complaint were delivered]. Therefore, the portion of the affidavit of service related to [the defendant]'s usual place of abode is inconclusive.

*Id.* at 226; *see also Kueffner v. Gottfried*, 154 Minn. 70, 73, 191 N.W. 271, 272 (1922) (noting that "all the statements in the [sheriff's] return were not entitled to the same weight," because deputy's delivery of summons to specified recipient at specified house on specified date was within deputy's personal knowledge, while "whether the house was defendant's usual place of abode would have to be determined from information [deputy] received and a consideration of such facts as were within his personal knowledge").

6

We read *Peterson* to stand for the proposition that an affidavit of service is prima facie evidence of service-related facts alleged on the affiant's personal knowledge, rebuttable only by clear and convincing evidence to the contrary. But in this case, the affidavit of service alleges only that, on January 7, 2014, at the address of Jackie Janson's Fargo residence, the affiant "personally served the[] summons and complaint [u]pon Scott Janson by then and there delivering a true and correct copy of same with Jacqueline K. Hill, a person of suitable age and discretion residing within the same abode." Nothing in the affidavit suggests that the affiant had any personal knowledge of Janson's usual place of abode. On these facts, we question whether Janson was required to produce clear and convincing evidence that the Fargo residence was not his usual place of abode in order to show insufficient service of process.

But regardless of the applicable *standard* of proof, Janson bore the *burden* of proof on the question of whether the Fargo residence was his usual place of abode. *See Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 384 (Minn. 2008) ("Once the plaintiff submits evidence of service, a defendant who challenges the sufficiency of service of process has the burden of showing that the service was improper."). The district court found that Janson's three "self-serving" affidavits were "expressly not credible" and that other supporting affidavits filed by Janson "[we]re wholly not credible" and "provide[d] no credible evidence of abode at the time of service." In our de novo review of the sufficiency of service of process, we defer to the district court's credibility determinations. *See Straus v. Straus*, 254 Minn. 234, 235, 94 N.W.2d 679, 680 (1959) ("The general rule that upon appeal the evidence must be taken in the light most favorable to the prevailing party applies

7

to evidence presented by affidavits submitted in support of and in opposition to motions. Conflicts in the evidence, even though the presentation is upon affidavits, are to be resolved by the trial court." (footnote omitted)). Because Janson produced no credible evidence that the Fargo residence was not his usual place of abode on January 7, 2014, he failed to meet his burden to show insufficient service of process. Consequently, we conclude that the judgment is not void for lack of personal jurisdiction, and we consider Janson's alternative argument.

To qualify for relief from a judgment on the grounds of mistake or inadvertence, "the moving party must show (1) a reasonable claim on the merits, (2) a reasonable excuse for its failure or neglect to act, (3) due diligence after notice of entry of judgment, and (4) absence of substantial prejudice to the opponent." *Westfield Ins. Co. v. Wensmann, Inc.*, 840 N.W.2d 438, 449 (Minn. App. 2013) (citing *Finden v. Klaas*, 268 Minn. 268, 271, 128 N.W.2d 748, 750 (1964)), *review denied* (Minn. Feb. 26, 2014). "The moving party bears the burden of showing that the *Finden* factors are satisfied . . . ." *Palladium Holdings, LLC v. Zuni Mortg. Loan Tr. 2006-OA1*, 775 N.W.2d 168, 174 (Minn. App. 2009), *review denied* (Minn. Jan. 27, 2010). And "[a]ll four of the *Finden* factors must be satisfied in order to justify relief under the rule." *Nguyen v. State Farm Mut. Auto. Ins. Co.*, 558 N.W.2d 487, 490 (Minn. 1997). "But a weak showing on one *Finden* factor may be offset by a strong showing on the others." *Westfield Ins. Co.*, 840 N.W.2d at 449 (quotation omitted).

In this case, the district court concluded that none of the *Finden* factors were satisfied. As to factor one, the court determined that Janson failed to show a reasonable

merits-based defense to Fish's claim of account stated, reasoning that Janson owed "several thousand dollars in legal bills" to Fish and "d[id] not deny the existence of these bills, although he attempt[ed] to qualify his debts to [Fish], somewhat, in his affidavits." These factual findings are supported by evidence in the record—specifically, averments by Alan B. Fish and by Janson himself. As to factor two, the court determined that Janson showed no reasonable excuse for the default, correctly noting that Janson provided no excuse independent of his unsuccessful argument that service of process was insufficient. As to factor four, the court determined that "[i]t would prejudice [Fish] highly to have to reimburse [Janson] for an already satisfied judgment." Evidence in the record, including the sheriff's return of execution, supports the court's factual finding that the judgment was satisfied.

In sum, the district court's findings with regard to factors one, two, and four are supported by the evidence, and its determinations on those factors are not based on an erroneous view of the law.[4] We conclude that the district court did not abuse its discretion by denying Janson's motion for relief from the default judgment and execution on the grounds of mistake or inadvertence.

**Affirmed.**

---

[4] As to factor three, the court determined that Janson failed to act with due diligence after notice of entry of judgment, apparently reasoning that Janson had notice of entry of judgment on the date of entry of judgment. In light of the district court's sound analysis of the remaining three factors, we see no need to look for error in its analysis of factor three. *Cf. Imperial Premium Fin., Inc. v. GK Cab Co.*, 603 N.W.2d 853, 859 (Minn. App. 2000) (noting that "a strong showing on three factors may offset relative weakness on one factor" but reasoning that movant "failed to satisfy two factors" and concluding that district court abused its discretion in vacating default judgment against movant).